[No. 4133.   Decided March 17, 1902.]

W. J. BURROWS *et ux., Respondents,* v. P. E. KINSLEY, *Appellant.*

APPEAL — EXCEPTIONS TO FINDINGS — SPECIFICATION.

Exceptions to findings of fact and conclusions of law by reference thereto by number are sufficient.

SAME — TIME FOR TAKING.

The fact that findings of fact and conclusions of law were signed by the court on one day and exceptions thereto noted on the day following would not invalidate such exceptions, under Bal. Code, § 5052, which provides that exceptions may be taken by a party's stating to the judge when the decision is made that he excepts to the same, specifying the part or parts excepted to, where the decision was not signed by the judge until the day following his signature to the findings and conclusions, and there is nothing in the record showing that the exceptions were not stated to the judge and allowed before the decision became a matter of record.

PAROL EVIDENCE — PROCEEDINGS OF COUNTY COMMISSIONERS.

Oral evidence is admissible for the purpose of showing proceedings of a board of county commissioners which have not been noted on its records.

HIGHWAYS — ESTABLISHMENT AND VACATION.

An order of the county commissioners establishing a road upon a petition asking for such road and the vacation of part of an old road would not operate as a vacation of the road asked for, in

the absence of an express order of the board, when the road established did not lie within the termini of the old road.

Appeal from Superior Court, Lincoln County.—Hon. CHARLES H. NEAL, Judge. Reversed.

*N. T. Caton* and *Joseph Sessions,* for appellant.

*Martin & Grant,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This suit was instituted by respondents against appellant. Respondents are the owners of certain lands in Lincoln county, across one corner of which runs a certain highway known as the "McNall Extension." The lands of respondents are described as the west half of section 29, township 21 N., range 39 E., W. M. In July, 1900, a petition to the board of county commissioners of Lincoln county was duly filed, the essential part of which is as follows:

"That a part of the McNall extension road be changed to run as follows: Beginning at or near the S. E. corner of section 29, T. 21 N., R. 39 E., W. M., running thence westerly, intersecting an old road, known as the 'Hardy Road,' in the N. E. ¼ of section 31, T. 21 N., R. 39 E., thence following the said Hardy road to the city of Sprague, and ending at said city of Sprague, the whole distance being about 3½ miles, and that said road shall be 60 feet in width; and your petitioners pray that a survey of said proposed change may be ordered. And your petitioners further pray for the vacation of that part of the McNall extension road lying north of said section 29."

In the concluding words of the petition, "And your petitioners further pray for the vacation of that part of the McNall extension road lying north of said section 29," the word "north" was evidently used through mistake, as the proof showed that no part of said road was north of

said section 29, and the court found that it was the inten-
tion to ask for the vacation of that part of the road which
runs through the west half of said section, and that it was
so considered at the hearing: Viewers were appointed in
pursuance of said petition, who thereupon made a favor-
able report thereon, and on the 11th day of January, 1901,
the following entry was made in the minutes of the pro-
ceedings of the board of county commissioners:

"At a regular meeting of the board held on the 11th day
of January, A. D. 1901, among other things the following
proceedings were had: ' 'In the matter of the change in the
McNall road petitioned for by W. J. Burrows and others,
it is hereby ordered that said road be opened according to
law.' "

The petition called both for the vacation of that part
·of the road across respondents' lands and for the establish-
ment of a road across other lands to the south of those be-
longing to respondents, and the petition calls it a "pro-
posed change in county road." The respondents under-
stood that the petition was granted in full, and, inasmuch
as the road supervisor had not opened up the new road,
respondents proceeded to open it up themselves, and, hav-
ing done so, they then inclosed by fence that part of the old
road which runs across their lands. Appellant was the
road supervisor of the district which included this road;
and he, deeming the fence an obstruction to the highway,
thereupon tore away the fence, which had been constructed
by respondents across the old road. Respondents then
commenced this suit, and asked that appellant be restrained
from further interfering with said fence or premises, al-
leging that appellant is insolvent; that he has caused re-
spondents great injury already by turning their pasture
out to the commons; that he threatens to cause them irre-
parable injury by repeatedly tearing down the fence around

their inclosure; and they also demand judgment for $1,500 damages. The answer denies the material allegations of the complaint, and alleges that the road which respondents fenced within their inclosure was a public highway, and had been such for fifteen or twenty years; that in removing the obstruction caused by said fence appellant was simply acting in the proper discharge of his duty as a road supervisor, and under the instructions of the prosecuting attorney of Lincoln county. The cause was tried by the court without a jury, and the court found that the board of commissioners had vacated the road where respondents inclosed it with their fence, and entered a decree permanently restraining appellant and all of his agents from molesting any fence or other property placed upon said premises by respondents, and also entered judgment against appellant for $50 damages, and for the costs of the action. From said decree and judgment this appeal was taken.

Respondents moved to strike the statement of facts and to dismiss the appeal, for the reason, as alleged, that no sufficient exceptions were taken to the findings of facts and conclusions of law. The record shows, at the foot of the findings of facts, and also of the conclusions of law, that exceptions were noted to certain findings and conclusions, which are specified by number. No grounds for the exceptions are specifically mentioned. This court has held that when only a general exception is taken to all the findings and conclusions, without specifically pointing out any particular ones, it is not sufficient; but in *Ranahan v. Gibbons,* 23 Wash. 255 (62 Pac. 773), it was held that it is sufficient when the exceptions specifically designate the findings by number to which exception is made. The court observed in that case (at page 261):

"There was an exception to each finding of fact and each conclusion of law. This court has held that an exception in

general language to all the findings of fact and conclusions of law is insufficient; but it has never gone to the extent of holding that exceptions to the facts by number, as in this case, fall within that rule. When such exceptions are taken, the statute has been complied with."

It is true that counsel usually add to the bare statement of the exception some ground or reason therefor, but the only real ground for an exception to a finding of facts is that it is not supported by the evidence; and an exception to a conclusion of law raises but one question,—that it does not follow as a matter of law from the facts as found. When, therefore, the court's attention has been specifically directed by exceptions to certain findings and conclusions by number, it would seem that, while further statements may not be inappropriate, yet they are not necessary.

It is further urged that the exceptions were not taken in time. The findings and conclusions purport to have been signed by the court on the 23d day of August, 1901. The exceptions appear to have been noted the day following,— August 24th. Section 5052, Bal. Code, provides that exceptions may be taken by any party, "either by stating to the judge . . . when the . . . decision is signed that such party excepts to the same, specifying the part or parts excepted to, . . . or by filing like written exceptions within five days after the filing of the . . . decision," etc. The statute does not seem to require that the exceptions shall be presented in writing, if taken at the time the decision is signed; but the exceptions may be taken "by stating to the judge," etc. It would therefore seem to follow that it becomes the duty of the judge to cause the exceptions to be noted in the record when they have been stated to him. There is nothing in the record to show that the exceptions were not stated to the judge at the time the decision was signed; but they appear not to

have been noted upon the papers until the following day. However, the exceptions were noted and signed by the court as allowed on the said following day, and the decision was not filed until that day. Thus it appears that the exceptions were allowed by the court before the decision became a matter of record; and with nothing in the record showing the contrary, we must presume that they were properly stated to the judge at the time the decision was signed. The motion is denied.

It is assigned as error that the court admitted oral evidence for the purpose of showing what order was made by the board of commissioners concerning the prayer of the petition aforesaid. Appellant urges that the records of the commissioners' court constitute the only competent evidence upon the subject. In *Nickeus v. Lewis County,* 23 Wash. 125 (62 Pac. 763), this court held that, since we have no statute in this state which makes the records of the board of county commissioners the only evidence of their proceedings, it is competent to introduce evidence *aliunde* the record to prove actual proceedings of which no record has been made. To the same effect are the following: *Robertson v. King County,* 20 Wash. 259 (55 Pac. 52); *State ex rel. Porter v. Headlee,* 19 Wash. 477 (53 Pac. 948). It must therefore be held here that the court did not err in the admission of oral testimony for the purpose of ascertaining if any order was in fact made which was not noted upon the records.

If respondents are entitled to prevail in this action it must be because no public highway existed at the place where they built their fence and at the time they built it. That must be determined by what was done by the board of commissioners concerning the petition heretofore mentioned. The record which is set out above certainly does

not disclose that any action was taken other than to order
the road opened, which was asked by the petition. It is
entirely silent as to any action by way of vacating the por-
tion of the old road across respondent's land. Respondents
sought to show by oral evidence that the board did in fact
order the vacation of the old road; but we think the evi-
dence does not sustain their contention. The only wit-
nesses introduced who seem to have been present at the
time the board really acted upon the matter were Mr. Kel-
logg, who was chairman of the board at the time, and Mr.
Brown, who was deputy auditor and clerk of the board.
Mr. Kellogg's testimony was certainly to the effect that the
board made no further order than that shown in the min-
utes, viz., to open up a new road; and Mr. Brown stated
that he could not say positively whether the order covered
more than was shown in the minutes or not. He says:
"The chairman of the board told me the road had been
opened, and I recorded it accordingly." To establish an
important act of the board of commissioners by evidence
*aliunde* the record requires clear and convincing proof.
Such we do not find in this record. We are convinced that
the trial court found that the board had vacated the old
road, not upon the oral testimony introduced, but upon
the theory that, as the petition purported to ask for a
"change of highway," calling for the vacation of certain
portions of the road and the opening of another, it followed
that when the order was made to open the new road it nec-
essarily included the vacation of the old. We do not think
the one is necessarily included in the other. Such may
have been the intention of the petitioners; but the essen-
tial inquiry here is, what did the commissioners do. They
may have thought the new road would be of public utility,
and at the same time they may have believed it not in the

interest of the public to vacate the old one. If the conditions were such as to make it reasonably clear that the one could not be granted without intending to grant the other, we might then possibly infer that such was the intention. But such is not the case here. The new road is described in the petition as being three and one-half miles long, and the evidence shows that it does not lie within the termini of the old road. It pursues an entirely different course from the old road, and intersects it at but one point. In *Vedder v. Marion County,* 28 Ore. 77 (36 Pac. 535), a petition asked for the establishment of a new road, and for the vacation of a portion of an old one. It was contended that the establishment of the new road operated to vacate the old one. The court said, at page 536:

"If the termini of the road established were within the limits of the old road, there might be some propriety in holding that the petition was for an alteration of an existing road, as the traveling public could as well be accommodated by the new as it had been by the old way. But since the new road does not lie within the termini of the old, and connects with it only at its north end, the county court, in pursuance of a stipulation of the parties, and of the character of the pleadings, properly construed the application to be two petitions,—one for the location and establishment of a new road, and the other for the vacation of an old one,—and could therefore grant or deny either, and hence the establishment of the new road did not operate to vacate the old one." ·

We therefore think it does not follow here that because the commissioners ordered the new road opened the old one was thereby vacated, and for the reasons heretofore stated it must be held that the old road was not vacated. It follows that the respondents were in fact obstructing the highway with their fence, although we do not believe from the record that they willfully did so. They doubtless

believed they had a right to maintain the fence there. Nevertheless, it appears that they had not such right, and that appellant was acting in the discharge of his official duties when he cleared the highway of obstruction.

The judgment was therefore erroneous, and is reversed, and the cause remanded, with instructions to the lower court to dismiss the action.

REAVIS, C. J., and FULLERTON, MOUNT, WHITE, DUNBAR, and ANDERS, JJ., concur.